## John Walker v. The State.

### No. 5715.   Decided April 7, 1920.

**1.—Tick Eradication—Allegation and Proof.**

It is not necessary under the Tick Eradication Act of 1917 to allege or prove that the cattle of the accused were infected with ticks, or that they had been inspected, as was held in previous authorities, and it not being unreasonable or arbitrary, the law must be upheld. Distinguishing McGee v. State, 81 Texas Crim. Rep., 210.

**2.—Same—Commissioner's Court—Legislative Intent—Statutes Construed.**

Section Five, of Chapter Sixty, was amended by Chapter Forty-four of the Acts of the Regular Session of the Thirty-fifth Legislature, and clearly indicates the intention of the Legislature to make the matter of tick eradication in the several counties, one for which the expense should be provided out of the various county funds, and where the evidence showed that a charge of twenty-five cents per head was fixed at the vat where defendant was notified to dip his cattle, his defense that he could not be required to pay this charge or compelled to dip his cattle until the county had prepared proper public facilities, such defense was valid and his specially requested charge should have been given.

Appeal from the County Court of Comanche. Tried below before the Honorable Jno. P. Hoff.

Appeal from a conviction of failing to comply with the tick eradication law. Penalty: a fine of twenty-five dollars.

The opinion states the case.

*Y. W. Holmes,* for appellant.—On question of insufficiency of information and complaint: Trimble v. Hawkins, 197 S. W. Rep., 224. Castleman v. Rainey, 211 S. W. Rep., 630; Serres v. Hammond, 214 S. W. Rep., 596.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited Emberline v. State, 212 S. W. Rep., 952.

LATTIMORE, Judge.—Appellant was convicted for violating the Tick Eradication Law, in the county court of Comanche County, and given a fine of $25.

It appears that Comanche County is in Zone No. 1, as fixed by the terms of Chapter 60, Acts of the Regular Session of the Thirty-Fifth Legislature known as the "Tick Eradication Law," and that on March 5, 1919; a quarantine was fixed upon said county by proclamation of the Governor, under the provisions of Sections 9 and 10 of said Act. Thereafter, and in August, 1919, appellant was duly notified to appear and dip his cattle at a certain named vat, and upon his failure to comply, this prosecution was instituted.

We do not think it necessary under the 1917 act to allege or prove that the cattle of accused were infected with ticks, or that they had been inspected, as was held under the 1913 statute, in McGee v. State, 81 Texas Crim. Rep., 210, 194 S. W. Rep., 652, and other authorities cited by appellant. An inspection of one, or any number less than the whole, could not determine that a herd of cattle were free from ticks; nor would an inspection of a herd at a given date, determine that the premises or range occupied by said cattle, were free from ticks; nor that such herd might not, under ordinary conditions, be again infected by going upon an infected range, or by having infected cattle cross, or come upon their range. As we understand it, the purpose of this law is to require the cattle of this State to be so treated as that fever carrying ticks, etc., will not attach themselves to such cattle, whenever by accident or necessity, the opportunity for contagion arises; and that to attain this end, the Legislature has seen fit to make obligatory, within the terms of the statute, the dipping of all cattle in this State, in the kind and character of solution fixed by authority of the agency established for the execution of the law, to-wit: the Live Stock Sanitary Commission of Texas. The power to make this law is confided to the legislative branch of the government, and so long as its terms are not shown to be unreasonable, or their execution so arbitrary as to seem oppressive, we must uphold it. We find nothing in the Act of 1917, which requires an inspection of the premises or cattle, as a condition precedent to the dipping of cattle, when properly notified so to do.

But one other question will be discussed. Section 5 of said Chapter 60 was amended by Chapter 44, Acts of the Regular Session of the Thirty-sixth Legislature, so as to read as follows: "It shall be the duty of the county commissioners courts to co-operate with and assist the Live Stock Sanitary Commission in protecting the live stock of their respective counties from all malignant, contagious, infectious or communicable diseases, whether such diseases exist within or outside the county, and otherwise protect the live stock interests of their counties. It shall be the duty of said commissioners courts to co-operate with the Live Stock Sanitary Commission and the officers working under the authority or direction of said commission in the suppression and eradication of fever carrying ticks, and all malignant, contagious, infectious or communicable diseases of live stock; provided when it becomes necessary to disinfect any premises,

county, or sub-division of the county infected with fever carrying ticks, anthrax, hog cholera, glanders, foot and mouth diseases, bovine tuberculosis or contagious abortion, under order of the Live Stock Sanitary Commission, the County Judge of the county where said premises are located, shall have such disinfecting done at the expense of the county, and according to the rules and regulations of the Live Stock Sanitary Commission, and the said commissioners courts are hereby authorized and empowered and directed to appropriate moneys out of the general fund of their counties for the purpose of constructing or leasing necessary public dipping vats within their counties, and for the purchase of dipping material, and for the constructing of any other facilities and for the purchasing of any other materials for the hire of labor necessary to destroy the disease and the carriers herein mentioned. Provided that for permanent improvements funds may be expended out of the county permanent fund.''

This seems clearly to indicate the intention of the Legislature to make the matter of tick eradication in the several counties, one for which the expense should be provided out of the various county funds.

The expressions: ''shall have such disinfecting done at the expense of the county,'' and ''The commissioners courts are hereby authorized and empowered and directed to appropriate moneys out of the general fund of their counties for the purpose of constructing or leasing necessary public dipping vats within their counties, and for the purchase of dipping material, and for the constructing of any other facilities, and for the purchasing of any other material, for the hire of labor necessary to destroy the diseases and the carriers herein mentioned,'' would seem to us to place beyond dispute the fact that after the taking effect of such amendment of 1919, such disinfecting, dipping, etc., was to be at the expense of the counties. On his trial, it was shown that a charge of twenty-five cents per head was fixed at the vat where appellant was notified to dip his cattle. One of his defenses was, that he could not be required to pay this charge, and that he could not be compelled to dip his cattle until the county had prepared proper public facilities; and he asked a special charge to the effect that he could not be convicted unless it was shown from the evidence that public facilities, without charge, were provided. This special instruction the trial court refused. Said amendment of 1919 went into effect in June of that year, and was effective in August, when this prosecution was instituted. We are unable to conclude otherwise than that such defense was valid, and that said charge should have been given. That the Legislature intended to make this a county expense, is apparent from their language. As to whether they had the power to direct such expenditure of county funds, is a question not before us.

For the error mentioned, the judgment of the trial court is reversed, and the cause is remanded.

*Reversed and remanded.*